UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                             )
RICHARD D. GLAWSON           )
        Plaintiff,           )
                             )
v.                           )   Civil Action No. 04-12199-MLW
                             )
ROBERT KEATON, et al         )
        Defendants           )
_____)
```

**MEMORANDUM OF LAW IN SUPPORT OF
ROBERT COSGROVE'S MOTION TO DISMISS**

Defendant Robert Cosgrove ("Cosgrove") respectfully submit this memorandum of law in support of their motion to dismiss the plaintiff's complaint.

The Complaint must be dismissed against Cosgrove[1] for several, mutually-independent, reasons. First, Cosgrove must be dismissed because the Eleventh Amendment bars citizens from suing States, state agencies and state officials in federal court. Cosgrove is also not a "person" within the meaning of 42 U.S.C. § 1983, and thus, cannot be sued under that statute. Furthermore, Cosgrove, an assistant district attorney, is entitled to both absolute and qualified immunity.

**THE ALLEGATIONS IN THE COMPLAINT**

The Complaint alleges the following:

On October 25, 1993 the plaintiff was indicted on one count of breaking and entering in the daytime with intent to commit a misdemeanor and one count of breaking

---

[1] Robert Cosgrove is the only defendant at the Norfolk District Attorney's Office who was served with this complaint. William Keating, the District Attorney, and Peter Casey, former assistant district attorney, were not served.

and entering in the daytime with intent to commit a felony. *See* Compl. at ¶ 6. On the same day the plaintiff was also arraigned on two counts of breaking and entering in the daytime with intent to commit a felony. *See* Compl. at ¶8. On October 4, 1994 the plaintiff plead guilty and was sentenced to eight to ten years imprisonment, with five years, 9 months to serve, the balance suspended and probation for three years. *See* Compl. at ¶ 9. The plaintiff was released on April 28, 1997. *See* Compl. at ¶ 6, p. 4.

On June 11, 1997, a default warrant was issued for plaintiff's arrest. *See* Compl. at ¶ 7, p. 4. On June 2, 1998, a final probation surrender hearing was held and the plaintiff was found to be in violation of the terms and conditions of his probation. He was sentenced to the remainder of the eight to ten year sentence. *See* Compl. at ¶ 9.

On November 10, 1998 the plaintiff filed a pro se petition for habeas corpus. *See* Compl. at ¶ 15. This petition was "completely ignored." *See* Compl. at ¶ 21. On June 3, 1999 the Massachusetts Appeals Court reversed the Superior Court's ruling on the probation revocation on one of the indictments. *See* Compl. at ¶ 17. On July 23, 1999, the plaintiff filed a motion for release from unlawful restraint pursuant to Mass.R. Crim.p. 30A based on his continued confinement for probation violation on the other indictment. *See* Compl. at ¶ 19. This motion was denied. *Id*. On October 16, 2001, the Massachusetts Appeals Court reversed the order denying the Rule 30A motion. *See* Compl. at ¶ 20.

While that appeal was pending, the trial court denied the plaintiff's motion to withdraw the original guilty pleas. That order was affirmed by the Appeals Court on June 7, 2001.

The plaintiff does not specify the basis for his claims against Cosgrove, but Cosgrove's only role in the petitioner's cases was to admit error to the Appeals Court in the

initial probation revocation appeal.

I.  **THE ELEVENTH AMENDMENT BARS THIS SUIT AGAINST COSGROVE IN HIS OFFICIAL CAPACITY.**

The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI.  By its own terms, the Amendment encompasses only suits brought against a State by citizens of another State, but it has long been established that the Amendment also bars suits against a State brought by citizens of the same State.  *See Hans v. Louisiana*, 134 U.S. 1 (1890).  "[I]n the absence of consent, a suit in which that State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."  *Papasan v. Allain*, 478 U.S. 265, 276 (1986), quoting *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100 (1984).  *See also Alabama v. Pugh*, 438 U.S. 781 (1978) (*per curiam*); *Edelman v. Jordan*, 415 U.S. 651 (1974).  Furthermore, the Supreme Court has specifically held that the Eleventh Amendment bars Section 1983 suits, as well as pendant state-law tort claims.  *See Quern v. Jordan*, 440 U.S. 332, 342-43 (1979) (42 U.S.C. § 1983 does not override the States' Eleventh Amendment immunity); *Pennhurst*, 465 U.S. at 106-121 (state-law claims).  Moreover, this bar exists whether the relief sought is legal or equitable.  *Pennhurst*, 465 U.S. at 100-01.

To the extent that Cosgrove is being sued in his official capacity, the Eleventh Amendment also precludes the plaintiff's claims.  *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (official-capacity suit is one against the State).  Although the petitioner also

named Cosgrove in his "individual capacity," Cosgrove had no other role in this case other than acting in his official capacity. *See, e.g., Elliot v. Cheshire Cty.*, 940 F.2d 7, 12 (1st Cir. 1991) ("[A]s a state officer" police trooper "was acting as an arm of the state;" dismissing § 1983 claim against state trooper).  *See also Edelman*, 415 U.S. at 663 (suit "seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment").

II. **THE COMPLAINT ALSO MUST BE DISMISSED BECAUSE STATE OFFICIALS ARE NOT "PERSONS" UNDER 42 U.S.C. § 1983 AND G.L. C. 12, §§ 11H-11*I*.**

> Title 42, section 1983 creates a cause of action against "every *person*," who, under color of [state law], subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (emphasis added).   It is settled law that neither states, nor state officials acting in their official capacity, are considered "persons" within the meaning of 42 U.S.C. § 1983.  *See Hafer v. Melo*, 502 U.S. 21, 27 (1991); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64-65 (1989).  As a result, "[n]either a State nor its officials acting in their official capacities" are subject to suit under § 1983.  *Id.  See also Johnson v. Rodriguez*, 943 F.2d 104, 108 (1st Cir. 1991), *cert. denied*, 502 U.S. 1063 (1992); *Elliot v. Cheshire County*, 940 F.2d 7, 12 (1st Cir. 1991) (state trooper could not be sued under § 1983; he is an "arm of the state" and a state is not a "person" under § 1983).

### III.   COSGROVE IS ABSOLUTELY IMMUNE FROM SUIT.

To the extent the Complaint can be construed as naming Cosgrove in his individual capacity, he is entitled to absolute immunity.  The Supreme Court has long held that prosecutors are absolutely immune from Section 1983 suits arising out of their role as an advocate for the State.  *See Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976).  Absolute immunity for prosecutors is, as it is for judges, necessary to protect the judicial process. *Burns v. Reed*, 500 U.S. 478, 485 (1991); *Imbler*, 424 U.S. at 422-23.  Without such protection,

> harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust.

*Burns*, 500 U.S. at 485, quoting *Imbler*, 424 U.S. at 423.

Consequently, a state prosecutor has absolute immunity from Section 1983 suits arising out the initiation and pursuit of a criminal prosecution, including actions taken in connection with judicial proceedings. *See, e.g., Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993).  *See also Kalina v. Fletcher*, 522 U.S. 118, 124 (1997) ("a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution [is] not amenable to suit under § 1983") (internal quotations omitted).

Moreover, when a government official is protected by absolute immunity, that protection is not eroded "no matter how erroneous the act may have been, how injurious its consequences, how informal the proceeding, or how malicious the motive." *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989); *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985).  *See also Dennis v. Sparks*, 449 U.S. 24, 25-26, 31 (1980) (allegations of malice

or bad faith in the execution of the officer's duties are insufficient to sustain the complaint when the officer possesses absolute immunity).

### IV.   COSGROVE IS ALSO ENTITLED TO QUALIFIED IMMUNITY.

Even if this Court were not to accord Cosgrove absolute immunity, he nevertheless is entitled to qualified immunity. Qualified immunity protects state officials exercising discretionary authority from civil lawsuits "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Moreover, the qualified immunity privilege is

> an entitlement not to stand trial or face the other burdens of litigation…. [It] is *immunity from suit* rather than the mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (italics original). Consequently, a court should rule on a claim of qualified immunity at the outset of a lawsuit. *Harlow,* 457 U.S. at 818; *Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (immunity challenge should be decided at beginning of lawsuit so that a "defendant who rightly claims qualified immunity [need not] engage in expensive and time-consuming preparation to defend the suit on its merits").

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court emphasized that "the requisites of a qualified immunity defense must be considered in proper sequence." *Id.* at 200. First, the court must ask, "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant's] conduct violated a constitutional right?" *Id.* at 201. If no constitutional guarantee has been infringed, the inquiry ends there and the defendant is entitled to qualified immunity. *Id.* If, however, a violation could be found

based on a favorable view of the complaint, "the next step is to ask whether the right was clearly established." *Id.* Third, if the complaint clears that hurdle, the court must decide whether a reasonable person would have known his conduct infringed a clearly-established constitutional right. *Id.* at 202.

A defendant is entitled to qualified immunity if the court finds in his favor at even *one* step of the analysis set forth above. *Saucier*, 533 U.S. at 200-01. In this case, the inquiry ends at the first stage. The plaintiff alleges that the defendants instituted "false prosecution and false imprisonment" that deprived him of liberty without due process of law, as guaranteed by the Fifth, Sixth and Fourteenth Amendments. *See* Compl. at ¶ 1. He does not specify what actions defendant Cosgrove took in causing these injuries. However, Cosgrove's only role in the plaintiff's case was to concur with his allegation that his sentence on one of the breaking and entering convictions was illegal and could not, therefore, be the basis for his probation revocation. The Appeals Court agreed and reversed the probation revocation.

In light of this, Cosgrove's actions did not violate any of the plaintiff's constitutional rights. In fact, he contributed to the Appeals Court's determination that his probation was improperly revoked. Thus, the inquiry can end here. The doctrine of qualified immunity bars the plaintiff's suit against Cosgrove.

## CONCLUSION

For the foregoing reasons, the defendant, Robert Cosgrove, respectfully requests that the Court dismiss the Complaint against him with prejudice.

        Respectfully submitted,
        THOMAS F. REILLY
        ATTORNEY GENERAL

        /s/ Susanne G. Reardon
        Susanne G. Reardon
        Assistant Attorney General
        Criminal Bureau
        One Ashburton Place
        Boston, Massachusetts 02108
        (617) 727-2200
        BBO No. 561669

December 21, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the attached documents was served upon petitioner, Richard Glawson, pro se, 20 Administration Road, Bridgewater, MA 02324, by first class mail, postage pre-paid, on December 21, 2005.

        /s/ Susanne G. Reardon
        Susanne G. Reardon
        Assistant Attorney General